## BARNHART v. GOLDSTEIN.

[No. 3,417.   Filed March 28, 1901.   Rehearing denied June 18, 1901.]

BILLS AND NOTES.—*Consideration.—Gambling Device.*—Under §2181 Burns 1894, prohibiting the keeping of gambling devices for the purpose of gaming, the vendor of a slot machine sold for gambling purposes cannot recover on a note given in payment for such machine.

From Jay Circuit Court; *J. M. Smith,* Judge.

Action by Julius Goldstein against Charles H. Barnhart, on promissory notes. From a judgment for plaintiff, defendant appeals. *Reversed.*

*C. H. Shockney, G. T. Whitaker, J. J.. Moran* and *W. H. Williamson,* for appellant.

*F. H. Snyder* and *G. W. Bergman,* for appellee.

HENLEY, C. J.—The appellee in this cause was the plaintiff below, and filed his complaint in the circuit court of Jay county against the appellant, who was defendant below. In his complaint, which was in two paragraphs, he sought to enforce the payment of two promissory notes. Appellant answered in three paragraphs. To each paragraph of answer the lower court sustained a demurrer. The appellant asked and was granted leave to amend his answer. He filed an amended answer in three paragraphs, to the second and third paragraphs of which the appellee interposed a demurrer, which was sustained to both paragraphs.

The question upon appeal arises from the action of the lower court in sustaining appellee's demurrer to the second and third paragraphs of appellant's amended answer. The consideration for the notes sued on, as is shown by the record, was the sale and transfer to appellant of a certain machine, commonly called a slot-machine. The questions decided by this opinion are questions of law arising upon the pleadings. No question of fact is passed upon. For the

Barnhart *v.* Goldstein.

purposes of this case, the demurrer admits that the machine described in the answer is a gambling device, and could be used for no other purpose. It is a question of law growing out of the averments of fact contained in the two paragraphs of answer which this opinion decides. We will discuss the questions arising upon both paragraphs of the complaint together.

The case of *Hubbard* v. *Moore,* 24 La. Ann. 591, was where a furniture dealer sold to the keeper of a brothel a large amount of furniture to be used in her house. He was aware of the character and business of his customer when he made the sale. The court holds that such knowledge did not show any intention upon the part of the seller to aid or sanction her course of vice and abandonment. In stating the rule of law applicable in such cases, the court said: "The seller who furnishes an article adapted to a legitimate and proper purpose is not responsible in a court of morals, and much less in a court of law, for a subsequent perversion of its use by the buyer. In the case at bar it is shown that the furniture was sold at cash prices, with time given for payment. The seller, there is no doubt, knew that it was to be used in a house of ill-fame, but how his knowledge of that fact involves him in the guilt of the inmates of that house, as an aider and abettor of lewdness and depravity, we think is not apparent. Although it is not shown that when he delivered the furniture he told the defendant to go her way and sin no more, it is not thence to be inferred that he encouraged her in continuing in her immoral course of life. That he contributed to enable her to continue it by selling her the furniture is too vague, hypothetical and remote to form an impediment to his recovery on the contract." We think the rule of law above announced is broad enough.

But the answers in this case present a different question. It is averred in the second paragraph of answer that the notes in suit were given for the purchase price of a certain gambling device, which was manufactured for the sole and

only purpose of being used in gambling, and that it was sold to appellant by one Golden for the express purpose of enabling appellant to violate the law of the State of Indiana by using the said machine in the business of gambling. That both purchaser and seller understood that the machine was to be used for gambling, and that it could be used for no other purpose and in no other business. That all of these facts were known to the seller of the machine at the time the notes in suit were executed; that there was no other or different consideration for the notes.

The third paragraph of answer avers substantially the same facts, with the additional fact that the appellee "took the notes with full knowledge of the purpose and consideration for which they were given."

It is a general rule, too well settled to need the citation of authority to sustain it, that the law will not aid in the enforcement of an unlawful contract, nor give damages for a breach of it. The keeping of the machine as set forth and described in both paragraphs of appellant's answer was unlawful, and expressly prohibited by statute. §2181 Burns 1894. Appellee knew the purpose for which it was to be used, and knew it could be used for no other purpose. He thus voluntarily aided in the perpetration of an act made by our law a crime and prohibited as against public policy.

In the case of *Hanauer* v. *Doane,* 12 Wall. 342, Justice Bradley, speaking for the court, said: "It is certainly contrary to public policy to give the aid of the courts to a vendor who knew that his goods were purchased, or to a lender who knew that his money was borrowed, for the purpose of being employed in the commission of a criminal act, injurious to society or to any of its members." And the vendor can not be permitted to stand upon the nice metaphysical distinction that, although he knows that the purchaser buys the goods for a highly immoral purpose, he does not sell them for that purpose. See, also, *Saratoga County Bank* v. *King,* 44 N. Y. 87; *Armstrong* v. *Toler,* 11 Wheat. 258, 272;

*Irwin* v. *Irwin,* 169 Pa. St. 529 ; *Adams* v. *Adams,* 25 Minn. 72 ; *Winchester, etc., Light Co.* v. *Veal,* 145 Ind. 506 ; *St. Louis Fair Assn.* v. *Carmody,* 151 Mo. 566, 57 S. W. 365.

We think the rule correctly stated in *Hanauer* v. *Doane, supra.* The facts in the case at bar make it clearly distinguishable from the case of *Bickel* v. *Sheets,* 24 Ind. 1, 6, and *Cummings* v. *Henry,* 10 Ind. 109. In the Bickel case the article sold was a billiard-table. In the Cummings case the property sold was a horse. The ownership and use of a horse or billiard-table, in the natural and common manner in which they are used, is known to be proper, and not prohibited by law or condemned by any code of morals.

We concur with Chief Justice Robertson in the case of *Steele* v. *Curle,* 4 Dana (Ky.), 381, where he said : "In all such cases, it would seem to us, that in a commercial, busy and enterprising age, the law should not attempt to establish a morality so pure, and exact, and vigilant, as that which would make it the legal duty of every seller of every vendible thing, to become a casuist or censor, so far as to make him responsible for the known motives of the buyer, and an active and guilty coöperator with him in his contemplated violation of law, of principle, or of justice." But the answer in this case shows that the buyer could have but one motive in the purchase of the machine, the commission of a crime; the machine was made for no other purpose and could be used for no other purpose. The seller knew all these facts, and sold the machine for the purpose of its being so used. The machine itself, the consideration, the whole transaction, is so connected with the illegal use to which it would necessarily be put, if used at all, as to render the transaction void. We think a distinction should be, and is, here made, between the sale of articles which may be used for a lawful purpose and the sale of articles, the use of which, in the only way in which they can be, or were intended to be used, both the vendor and purchaser knew to be a crime. If the machine was sold by appellee to appellant to be used

by him as a mere plaything, or a curiosity, a reply to that effect would avoid the answer, and it would be only by such a reply that the contract upon which this claim is founded could be disconnected from the illegal use of the article sold and shown not to be in furtherance of such illegal use.

The question as to whether the notes in suit would be collectible in the hands of a *bona fide* purchaser before maturity for value without notice of their infirmity is not raised by the pleadings. The averments of the complaint are such that a defense which would be good against the original payee of the note would be good against the appellee. If the lower court had overruled the demurrer to the amended second paragraph of answer, a reply to the effect that the appellant purchased the note before maturity in good faith, for a valuable consideration, and without notice of any defense existing between the original parties thereto, would have presented the other question discussed by appellant. We therefore conclude that the lower court erred in sustaining appellee's demurrer to the second and third paragraphs of amended answer.

Judgment reversed, with instruction to the lower court to overrule appellee's demurrer to the second and third paragraphs of appellant's amended answer.